McNULTY, Acting Chief Judge.
Petitioner, a licensed architect, seeks a writ of certiorari to review the proceedings before the Florida State Board of Architecture in which that Board suspended his architect license for a period of one year.
The Board charged petitioner with two counts of affixing his name and seal as an architect to architectural plans or drawings which were not prepared by him or under his “responsible supervising control,” in violation of F.S. § 467.14, F.S.A.1971, and of the rules of the Florida State Board of Architecture. Count one related to drawings and plans for the First Advent Christian Church of Tampa and count two related to plans for the Northside Church of Christ in Sarasota County. After due notice a hearing was held before the respondent Board of Architecture and the aforesaid license suspension resulted. We are compelled to issue the writ and quash [he proceedings below.
Concerning count one of the charges, the sole evidence presented by respondent to support it is condensed as follows: Reverend Johnson, pastor of the First Advent Christian Church of Tampa, testified that as a member of the church building committee he contacted an architectural draftsman, one Cheevers, relative to the latter preparing plans for a new church sanctuary. He knew that an architectural seal was necessary to get city approval of the plans so he purposely contacted Cheevers because he had been informed that Cheev-ers had an office adjacent to an architect (petitioner), and that Cheevers worked for that architect. He, Reverend Johnson, dealt directly with Cheevers rather than with petitioner, he said, in the hope that costs could be minimized. As to his knowledge of any facts bearing on the specific charges under count one, however, Reverend Johnson testified only that, “I have no knowledge who planned them [the building plans].”
The second and final “prosecution” witness as to count one was one George Briz-bin, the chairman of the church building committee. He essentially corroborated what Reverend Johnson had said about the liason directly with Cheevers; and concerning the specific charges in count one his entire testimony is encapsulated in the following single question of petitioner’s counsel and the answer thereto on cross-examination :
“Q. Of your own personal knowledge, Mr. Brizbin, do you know for a fact and can so state that these plans were not prepared under the supervision of Mr. Floyd ?
A. No, sir, I cannot.”
The respondent rested at that point as to count one and an ensuing motion for dismissal of the count was forthwith denied.
Under count two, the sole evidence presented by respondent consisted of two sets of plans for the Northside Church of Christ in Sarasota County, each of which was established by the suppletory oath of a Sarasota draftsman, one Shearur, who identified them as having been prepared by him. The two sets are very similar except that one has the signature and seal of petitioner as an architect and the other doesn’t. Mr. Shearur’s brief explanation during his testimony for the prosecution was that he had originally been commissioned by an engineer from Bradenton, one Tyona, to draw plans for the church and that the first set of the aforesaid plans resulted. These plans were not approved, however, because of the absence of an architect seal, at which point the engineer withdrew from the project and had nothing more to do with it. Subsequently, Mr. Shearur testified, the Northside Church people personally contacted him about reviving the project and about preparing new *496 plans which would pass muster by having an architect seal. Whereupon, he prepared the second set of plans aforesaid which contained petitioner’s signature and seal.
As to the specific charges under count two, however, the sole evidence given by Mr. Shearur during the respondent’s case in chief came on cross-examination:
“Q. Did you work on the project for this church under the supervision of architect Alfred Floyd [petitioner] ?
A. Yes, I did.
Q. Does this appear to be those plans [the second set] ?
A. Yes, it does.”
The respondent then rested as to count two and a motion to dismiss this count was denied.
Obviously, at this point in the proceeding there was not one scintilla of evidence upon which a finding of guilt of either of the charges could be predicated. Each of petitioner’s motions clearly should have been granted.
Anyhow, perhaps in the spirit of full disclosure (but in any case a risky tactic), the petitioner rather than standing on the record as it existed presented evidence in defense of the charges. Apart from his own testimony, which is of course exculpatory and need not even be alluded to, he recalled Cheevers, the draftsman involved in count one, and Shearur, the draftsman involved in count two. The sum and substance of Cheever’s testimony was that while he is an independent draftsman he worked almost exclusively for petitioner and maintained his own office adjacent to petitioner’s offices; and that during the entire course of drafting the plans for the aforesaid First Advent Christian Church in Tampa he was supervised and directed therein by petitioner. While he personally drew about 90 percent of the plans and specifications, he said, all technical and architectural computation and data were performed and furnished by and at the direction of petitioner.
Concerning count two the draftsman Shearur more fully explained the existence of the two similar sets of plans of the Sarasota church aforesaid, only one of which set of plans bore the signature and seal of petitioner as we’ve noted. Shearur again testified as previously that he had first prepared a set of plans at the request of an engineer; but that when the engineer withdrew from the matter he, Shearur, then contacted petitioner and requested him to sign and seal those plans so that the church people could get a County building permit. He testified that petitioner became extremely indignant and absolutely refused to do so. He said that petitioner agreed to supervise, control and direct a new set of plans, however, provided that they be redrawn in his office in Tampa. Whereupon, Shearur testified, he made several trips to Tampa and worked in petitioner’s office for a total of no less than 30 to 32 hours preparing and completing another set of plans (the second set aforementioned and the one containing petitioner’s signature and seal) and all at the direction and under the supervision of petitioner.
At this point in his testimony, Shearur admitted that without the knowledge of petitioner and when the petitioner would be temporarily out of the office inspecting other jobs, he, Shearur, would substitute a page or portions from his original, previously prepared plans if they substantially met requirements insisted upon by petitioner in the drawing of the new plans. He testified as to how he did this. He said he used sepias, or photo-copies, made from original tracings previously made for the first set of plans and that petitioner thought they had actually been redrawn as he had directed. The striking similarity between the two sets of plans is thus explained and no other evidence refutes it.
*497 The foregoing constitutes, in substance, the entire evidence of this case as it bears directly on the charges made. Now, there is some evidence of incidental matters such as the direct billing from the draftsmen to the churches and the payment by the churches directly to the draftsmen; and some testimony about the fact that no member of the building committee of the two respective churches had any significant personal contact with petitioner during the times material. Respondent apparently seeks to rely on these facts as tending to suggest that petitioner really had nothing to do with the preparation of the. plans. We hold, however, that as negatives, they are incompetent for this purpose.
Likewise, in fairness to respondent, we mention too that the petitioner summoned the Tampa city building inspector and the contractor who built the Tampa church involved in count one, each of whom testified that he had had some consultation with petitioner and that he considered petitioner the architect on the job. These facts, however, are no more probative that petitioner responsibly supervised the drawing of the plans than is lack of privity with the church people probative that he didn’t.
In short, no witnesses other than the two draftsmen (and the petitioner himself of course) testified concerning the specific charges herein and they uncon-tradictedly exculpated petitioner. Moreover, no competent circumstantial evidence was developed which otherwise tended sufficiently to support the charges. Indeed, if this were a judicial criminal proceeding, a corpus delicti, i. e., the wrongful act, is not even prima facie shown. And while quasi-judicial administrative proceedings need not follow the requirements of form insisted upon in the courts, nevertheless, with regard to punitive proceedings whereby a licensed professional is in jeopardy of losing his means of livelihood in his chosen profession, matters of substance cannot be ignored. Here, the record is devoid of any cognizance of this precept.
On this latter observation, we hasten to add that the Florida State Board of Architecture is composed of non-lawyers. Pursuant to lawful .authority, however, they customarily engage lawyers to advise them.[1] They did so here. In view whereof, the blame for the striking resemblance of the instant proceeding to the infamous Star Chamber of Henry VIII cannot be laid at the feet of the respondent Board.
As for the Board’s legitimate concern, we suspect that there may well have been underlying difficulties in the past between petitioner and his colleagues in the profession» of architecture. We surmise, too, that as within other professions, there may have been whispered rumors and suspicions about his unprofessional conduct. But no honorable professional ought undertake to cleanse its house, an awesome yet affirmative duty, without adhering to the same principles of honor it seeks to espouse. It is hoped, and indeed intended, that the legal profession will properly aid them in the task. Upon default in the premises, however, certiorari is appropriate. We issue our writ this day and quash the order herein under review.
Certiorari granted.
BOARDMAN, J., concurs.
EVANS, VERNON W., Jr., Associate Judge, dissents.

. See, F.S. § 467.14(5), F.S.A.1971.